IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| AMANDA NELSON, on behalf of herself and all others similarly situated,<br><br>  Plaintiffs,<br><br>v.<br><br>JUBILEE MART, LLC, et al.,<br><br>  Defendants. | )<br>)<br>)<br>)<br>)  No. 2:21-cv-02184-SHL-tmp<br>)<br>)<br>)<br>) |

**ORDER GRANTING PARTIES' JOINT MOTION FOR FLSA SETTLEMENT**

Plaintiff Amanda Nelson, on behalf of herself and all others similarly situated, filed a Complaint against Defendants Jubilee Mart, LLC, Akbar Panjwani, and Amaan Shiroff on March 30, 2021, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. (ECF No. 1.) She amended her Complaint on April 22, 2021, (ECF No. 10), and the Court granted conditional certification of the collective action on August 4, 2021. (ECF No. 26.) Having arrived at a negotiated settlement agreement following an unsuccessful mediation, the Parties jointly seek approval of their proposed Settlement Agreement. (ECF No. 48; see ECF No. 48-2, "Settlement Agreement and General Release".) For the following reasons, the Court **GRANTS** the Motion.

**BACKGROUND**

The Amended Complaint alleges that Defendants failed to pay Plaintiff the applicable FLSA overtime wages for all hours worked in excess of 40 hours per week. (ECF No. 10.) Specifically, Plaintiff alleges that, from March 18, 2018 through March 21, 2021, she was employed as a non-exempt store employee at Jubilee Mart. (Id. at PageID 27-28.) For the majority of her employment, she held the position of cashier, and, during her last year of

employment, she held the position of store manager.  (Id.)  Even as store manager, Plaintiff alleges that she made $8.50 per hour, "far less than the $684 FLSA exemption threshold," and therefore should have been and was classified as a non-exempt employee under the FLSA.  (Id. at PageID 28.)

Plaintiff alleges that Defendant Jubilee Mart, by and through managers including Defendants Kassam Ali and Amaan Shroff, controlled the number of hours that Plaintiff worked and paid her in cash.  (Id.)  She alleges that Defendant would pay her "straight time, in cash, without any withholding, for all overtime hours worked," although it knew or should have known that she worked overtime hours for which she was not paid overtime premiums.  (Id.)  The Complaint, brought as a collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b), extends these allegations to similarly situated individuals who are, or were, non-exempt employees of Defendant who were not paid overtime wages for hours worked over 40 in a workweek.  (Id. at PageID 27.)  Plaintiffs seek a declaratory judgment that Defendants' practices are unlawful under the FLSA, pre-judgment interest, unpaid wages, liquidated, compensatory, and punitive damages, designation as a collective action, and reasonable attorneys' fees and costs.  (Id. at PageID 30.)

On August 3, 2021, Plaintiff filed an Unopposed Motion for Conditional Certification of Collective Action, to Facilitate Notice to Potential Class Members, and for Equitable Tolling. (ECF No. 25.)  Before she moved for this relief, Plaintiff had already provided Notice of the Consent to Join by three (3) opt-in Plaintiffs, Kari Jones, Carla Stewart and Monique Lemons. (ECF No. 7-8.)  The Court granted the Motion and conditionally certified the class the next day. (ECF No. 26.)  After the class was conditionally certified, Plaintiff filed the Notices of Consent to Join by nine (9) additional Opt-in Plaintiffs, as well as a new Notice of Consent form by

previous opt-in Plaintiff Monique Lemons. (ECF Nos. 27-36.) In sum, twelve (12) additional Plaintiffs consented to become party plaintiffs in the action.

The Parties filed their Joint Motion for Settlement Approval on June 29, 2022, agreeing that the settlement would provide for "full payment of the total direct damages claimed plus half of the claimed total liquidated damages," which amounts to $27,839.98, "plus attorneys' fees and expenses," which amounts to $22,160.02. (ECF No. 48-1 at PageID 187; ECF No. 48-2 at PageID 190.) Per their Memorandum in support of their Motion, it appears that certain facts remain in dispute – whether all Plaintiffs in the proposed collective action were fully compensated for their work, whether Plaintiffs were actually employed by Defendants, and whether Plaintiffs' recollections could constitute best evidence of damages due to Defendants' faulty records. (ECF No. 48-1 at PageID 185-86.) As expressed in their Memorandum, the Parties have agreed to settle to avoid the risk of trial and its potential consequences. (Id. at PageID 186.) The Court found that the Parties' Joint Motion lacked sufficient facts to allow the Court to properly assess the Settlement's fairness and held a Hearing on the Joint Motion on August 18, 2022. Plaintiffs' Counsel later submitted an Affidavit, (ECF No. 50), that supplemented the Parties' Joint Motion enough for the Court to complete the following analysis.

## ANALYSIS

### I. Collective Action under the FLSA

The FLSA provides, in pertinent part, that an employer who engages in certain prohibited practices, like failing to pay overtime, shall be liable to a covered employee for back wages and liquidated damages. See 29 U.S.C. § 216(b). Unlike class actions governed by Federal Rule of Civil Procedure 23, when an employee who sues his or her employer in a representative capacity under § 216(b), any "similarly situated" plaintiffs must choose whether they "opt into" the

3

lawsuit, which is known under the FLSA as a "collective action." O'Brien v. Ed Donnelly Enters., Inc., 575 F.3d 567, 583 (6th Cir. 2009), abrogated on other grounds by Campbell-Ewald Co. v. Gomez, 136 S. Ct. 663 (2016); Comer v. Wal-Mart Stores, Inc., 454 F.3d 544, 546 (6th Cir. 2006). An FLSA collective action must satisfy the following requirements to be viable under this provision: "(1) the plaintiffs must be "similarly situated"; and (2) all plaintiffs must signal in writing their affirmative consent to participate in the action." O'Bryant v. ABC Phones of N. Carolina, Inc., No. 2:19-CV-02378, 2020 WL 4493157, at *5 (W.D. Tenn. Aug. 4, 2020) (citing Comer, 454 F.3d at 546 (internal citations omitted)). "District courts have broad discretion in implementing procedures to ensure that these requirements are met." Id. (citing Hoffmann–La Roche, Inc. v. Sperling, 493 U.S. 165, 167–68 (1989)).

The collective action certification process proceeds in two stages. See, e.g., Frye v. Baptist Mem'l Hosp., Inc., 495 F. App'x 669, 671 (6th Cir. 2012); In re HCR ManorCare, Inc., No. 11-3866, 2011 WL 7461073, at *1 (6th Cir. Sept. 28, 2011); see also Monroe v. FTS USA, LLC, 860 F.3d 398, 397 (6th Cir. 2017) ("Courts typically bifurcate certification of FLSA collective action cases."). The first stage occurs pre-discovery, when the court may grant conditional certification of the collective action. O'Bryant, 2020 WL 4493157, at *6. The plaintiff must make a "modest factual showing" by demonstrating that the potential class members described in the Complaint are "similarly situated" – which is a "fairly lenient standard" to meet that "typically results in . . . certification." Comer, 454 F.3d at 547 (quotations and citations omitted).

After the first stage, potential class members are provided notice and given opt-in forms to determine whether they may want to participate. See O'Bryant, 2020 WL 4493157, at *6. When the forms are collected and discovery has concluded, the second stage approaches:

4

"traditionally on the motion of the defendant for decertification [of the collective]," the Court applies a "stricter standard" to determine whether plaintiffs are able to satisfy their burden to show that they are all "similarly situated." Id. (citing Comer, 454 F.3d at 546-47); see also Wilks v. Pep Boys, No. 3:02-0837, 2006 WL 2821700, at *2 (M.D. Tenn. Sept. 26, 2006).

On August 4, 2021, the Court granted conditional certification to the potential class members, agreeing that Plaintiff demonstrated the "modest factual showing" required for conditional certification as a collective action by alleging a group of Jubilee Mart employees similar to herself. (ECF No. 26 (citing Comer, 454 F.3d at 547 (internal citations omitted)).) In the Order, the Court defined the collective as "all individuals employed by Jubilee Mart, LLC in one of its stores from March 30, 2018, to present and compensated on an hourly basis who were denied the statutorily required overtime premium for all hours worked in excess of forty hours in a work week[.]" (Id. at PageID 113.) Since then, Plaintiffs have submitted ten (10) Notices of Filing Consent to Join, not including the two filed prior to the conditional certification, each signed by a current or former employee of Defendant who has consented to become a party plaintiff in the litigation. (See ECF Nos. 7, 8, 27-36.) By doing so, the following Plaintiffs have satisfied the "opt-in" requirement: Kari Jones, Carla Stewart, Melissa Bland, Jonathan Gee, Dontavius Goodwyn, Nancy Williams, Monique Lemons, Shayla Fenlon, Jaclynn Rook, Kalista Sanders, Alice Teresa Tankersly, and M. Phelps. See 29 U.S.C. § 216(b); 7B Charles Alan Wright et al., Federal Practice and Procedure § 1807 (3d ed. 2005) (collecting cases).

## II.   Collective Action Settlements under the FLSA

Once a covered employee files an FLSA claim pursuant to its overtime compensation provision, the only two ways that the claim may be resolved through an agreement of the parties are if (1) the Secretary of Labor supervises the payment of back wages or (2) the employer and

employee present the proposed settlement to the district court for approval. Lynn's Food Stores, Inc. v. United States ex rel. U.S. Dep't of Labor, 679 F.2d 1350, 1352–53 (11th Cir. 1982). The Parties have taken the second route, presenting their Proposed Settlement Agreement and Release to this Court for approval. (ECF No. 48-2.) A district court must scrutinize a proposed FLSA settlement and determine whether it is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." Lynn's Food Stores, 679 F.2d at 1355; Nutting v. Unilever Mfg. (U.S.) Inc., No. 2:14-cv-02239, 2014 WL 2959481, at *3 (W.D. Tenn. June 13, 2014).

### A. Bona Fide Dispute

Before determining whether the Settlement here is fair and reasonable, the Court must find that there is a bona fide dispute between the parties. "A bona fide dispute exists when there are legitimate questions about 'the existence and extent of [d]efendant's FLSA liability.'" O'Bryant, 2020 WL 4493157, at *7 (quoting Selk v. Pioneers Mem'l Healthcare Dist., 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016)). "There must be some doubt . . . that the plaintiffs would succeed on the merits through litigation of their [FLSA] claims." Id.

The Court finds that there is a bona fide dispute. To begin, this matter is in the process of being litigated, as evidenced by Plaintiffs' Amended Complaint arguing that Defendants did not properly compensate Plaintiffs for overtime hours worked. (ECF No. 10 at PageID 25-26.) Defendants subsequently filed an Answer to Plaintiffs' Amended Complaint, wherein they denied most of Plaintiffs' claims, although they did concede a number of Plaintiffs' factual contentions. (ECF No. 15.) The Parties also include in their Joint Motion that, while both Parties believe their success at trial would be possible, it is not guaranteed. (ECF No. 48-1 at PageID 186-87.) This is particularly true as some disputed facts, such as whether some plaintiffs were truly employed by Defendants at the time of the alleged overtime infractions, were not

resolved through discovery. (Id. at 187.) Thus, given the existence of an ongoing lawsuit where both parties have expressed doubt about their success at trial, the Court finds there was a bona fide dispute.

### B. Fair and Reasonable Resolution

The Sixth Circuit has not expressly determined the factors to consider when evaluating the fairness and reasonableness of a collective action settlement under the FLSA. However, district courts in the Circuit have applied the factors stated in the Sixth Circuit's consideration of a hybrid class action-collective action FLSA settlement: (1) the risk of fraud or collusion, (2) the complexity, expense and likely duration of the litigation, (3) the amount of discovery engaged in by the parties, (4) the likelihood of success on the merits, (5) the opinions of class counsel and class representatives, (6) the reaction of absent class members, and (7) the public interest. Does 1-2 v. Deja Vu Servs., Inc., 925 F.3d 886, 894-95 (6th Cir. 2019) (citing Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp. ("UAW"), 497 F.3d 615, 631 (6th Cir. 2007)); see also Fitzgerald v. P.L. Mktg., Inc., No. 2:17-cv-02251, 2020 WL 3621250, at *6 (W.D. Tenn. July 2, 2020); O'Bryant, 2020 WL 4493157, at *7; Hawkins v. Accurate Nursing Servs., Inc., No. 5:19-cv-1572, 2020 WL 1031530, at *1 (N.D. Ohio Mar. 3, 2020). Here, the Court finds that each factor weighs in favor of approving the Settlement and therefore concludes that the Settlement is a fair and reasonable resolution of this dispute.

#### 1. Risk of Fraud or Collusion

The Parties assert in their Joint Motion that the risk of fraud or collusion in this case is low as "the settlement was reached only after the Parties engaged in mediation conducted by a third-party mediator, while represented by experienced counsel." (ECF No. 48-1 at PageID

7

186.) Plaintiffs' Counsel supplemented this assertion with further specifics of his qualifications and history litigating FLSA collective suits, among others. (See ECF No. 50 at PageID 194-95.) The Court agrees with the Parties' assessment. Both Parties are represented by experienced counsel and engaged in arms-length negotiation through an independent mediator. Moreover, there is no evidence of fraud or collusion found in the record. Therefore, the Court finds no risk of fraud or collusion and this factor weighs in favor of approving the Settlement.

### 2. Complexity, Expense, and Likely Duration of Litigation

The Parties note that litigating this matter would involve "considerable effort" with "sizeable costs" for trial preparation. (ECF No. 48-1 at PageID 186.) Plaintiffs' Counsel avers that the disputed facts and allegedly inconsistent, or even nonexistent, record keeping at Defendants' stores "took this case beyond the ordinary complexity of FLSA disputes." (ECF No. 50 at PageID 198.) The Court agrees. While this suit is not as complex as that found in Does 1-2, which combined a Rule 23 class action with a FLSA collective action, it still involves a total of 13 possible Plaintiffs and potentially voluminous though spotty records of working hours for the three-year period being contested here. Moreover, as the Parties indicated in their Joint Motion, litigation expenses in preparation for trial would likely be sizeable, potentially reducing recovery for Plaintiffs. As such, the Court finds that this factor weighs in favor of approving the Settlement.

### 3. Amount of Discovery Engaged in by Parties

The Joint Motion describes "extensive written discovery" engaged in by the Parties through which Plaintiffs' claims of back wages were thoroughly investigated. (ECF No. 48-1 at PageID 186.) This is supported by Plaintiffs' Counsel's billing records, which include numerous mentions of discovery review and organization, among other discovery related issues. (See ECF

No. 50-1.) Plaintiffs' Counsel used this discovery to determine the amount allegedly owed to Plaintiffs which ultimately became the foundation for the final settlement agreement. (ECF No. 48-1 at PageID 186.) The Court finds that the Parties engaged in sufficient discovery to inform their relative positions and come to a reasonable and fair settlement amount. Thus, this factor similarly weighs in favor of approving the Settlement.

### 4. Likelihood of Success on the Merits

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits." Does 1-2, 925 F.3d at 895 (citing Poplar Creek Dev. Co. v. Chesapeake Appalachia, LLC, 636 F.3d 235, 245 (6th Cir. 2011)). "This is not simply an estimation of the plaintiffs' chances of success on the merits, but rather a balancing of the likelihood of success "against the amount and form of relief offered in the settlement." Ware v. CKF Enterprises, Inc., No. 5:19-183-DCR, 2020 WL 2441415, at *11 (E.D. Ky. May 12, 2020) (quoting Does 1-2, 925 F.3d at 895).

In this case, the likelihood of success is not particularly clear because the record remains sparse with little briefing. Defendants concede that "some Plaintiffs were not properly compensated for their overtime hours;" how many Plaintiffs this applies to is not described. (ECF No. 48-1 at PageID 185.) Defendants do assert, however, that they are not liable to some opt-in Plaintiffs because they do not qualify as employees and worked for stores too tenuously affiliated with Defendants' business. (Id. at PageID 185-86.) Plaintiffs' Counsel notes specifically that Defendants contest whether Michelle Phelps was employed by Jubilee Mart, a contention supported by "multiple witnesses." (ECF No. 50-2 at PageID 220.) Plaintiffs, meanwhile, assert that faulty record-keeping by Defendants should allow Plaintiffs to substitute their own recollections in determining the number of hours of overtime each Plaintiff worked;

9

Defendants contest this and argue that any hours calculations must be based on records they provided. (ECF No. 48-1 at PageID 185.)

It is difficult for the Court to assess these claims given the dearth of proffered evidence in the record. Defendants, however, have conceded that at least *some* of the Plaintiffs are entitled to at least *some* amount of backpay. This favors success on the merits for these Plaintiffs but tells the Court nothing for the others. This potential success is clouded, however, by the Defendants' assertion that some Plaintiffs were not Defendants' employees; Defendants contest, at the very least, whether Michelle Phelps was actually employed at one of their stores. This argument calls into question the possibility of recovery for some number of the Plaintiffs. In total, the Court cannot conclude with any certainty the likelihood of success on the merits for either party.

The value of the Settlement, however, is more certain. Plaintiffs' Counsel noted that the amount included in the Settlement provides for "full payment of the total direct damages claimed plus half of the claimed total liquidated damages . . . ." (Id. at PageID 187.) On further clarification at the August hearing, it became clear that the Settlement includes an amount that approximates the total backpay that all Plaintiffs were entitled to and half of the liquidated damages amount, nearly all of what the group would be statutorily entitled to. Thus, given the dispute over the proper basis for calculating these damages, the Settlement offers the group of Plaintiffs nearly everything that Plaintiffs' Counsel believes they are entitled to, eliminating the uncertainty in the recovery amount that would arise in further litigation.[1] For the Plaintiff that Defendants contest was not actually Defendants' employee, her uncertain recovery is instead

---

[1] It is important to note that the distribution of the settlement will be different – it will be distributed on an equal basis to all Plaintiffs.

10

guaranteed, albeit at a slightly lower amount than statutorily required. The Court finds that, although the likelihood of success on the merits for either party is murky at best, the certainty of compensation through the Settlement sufficiently outweighs the value of proceeding to litigation, particularly given the contested measure of damages based on Defendants' allegedly insufficient record keeping. The Court thus finds that this, most important, factor weighs in favor of approving the Settlement.

### 5. Class Response to Proposed Settlement

#### i. Opinions of Class Counsel and Class Representatives

Plaintiffs' Counsel represents that, based on their knowledge of the case and applicable law, the settlement represents a fair and reasonable resolution. (Id.) Plaintiffs' Counsel is experienced in litigating single-plaintiff and collective action employment lawsuits. (Id.) The Court therefore finds that this factor weighs in favor of approving the Settlement.

#### ii. Reactions of Absent Class Members

Typically, because this is an opt-in FLSA collective action, absent members would not exist. See, e.g., Bernardez v. Firstsource Solutions USA, LLC, No. 3:17-cv-613-RGJ, 2022 WL 1156972, at *6 (W.D. Ky. April 19, 2022). The Parties, however, have excluded two Collective Members from the Settlement Agreement, namely Dontavious Goodwyn and Jonathan Gee, stating that neither had a viable overtime claim. (ECF No. 48-2 at PageID 190, n.1.) Neither of these Plaintiffs have objected to the Settlement in question. Moreover, because they are being excluded from the Settlement, they are not bound by the Settlement's Release of Claims. They would therefore both be entitled to bring separate, subsequent actions against Defendants should they decide to do so. As such, the Court finds that this factor weighs in favor of approving the Settlement.

11

### 6. Public Interest

There is a strong public interest in settling complex, collective action suits as doing so avoids lengthy litigation and conserves scarce judicial resources. Does 1-2, 925 F.3d at 899. Enforcing the FLSA, however, is a similarly strong public interest that ensures that employees are encouraged to hold employers accountable for complying with employment laws. Id. The Settlement naturally forecloses potentially protracted litigation that the Parties themselves acknowledge would require "considerable effort" at "sizeable cost[]" to prepare for. (ECF No. 48-1 at PageID 186.) The Settlement also provides Plaintiffs as a class nearly everything they claim they are entitled to with an award equal to Plaintiffs' entire estimated damages plus one-half of their estimated liquidated damages. The Settlement therefore both conserves judicial resources while substantially enforcing the FLSA, largely furthering both public interests. This factor therefore weighs in favor of approving the Settlement.

## C. Settlement Components

Two other issues regarding the Settlement fall outside of the preceding bona fide dispute and fairness analysis. The Court will address each issue individually.

### 1. Service Award

The Settlement includes a "named plaintiff service award" for Plaintiff Amanda Nelson in the amount of $3,000. (Id. at 190.) "Such awards are not uncommon and courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." Ross v. Jack Rabbit Servs., LLC, No. 3:14-cv-44-DJH, 2016 WL 7320890, at *5 (W.D. Ky. Dec. 15, 2016) (quoting Dillworth v. Case Farms Processing, Inc., No. 5:08-cv-1694, 2010 WL 776933, at *7 (N.D. Ohio, Mar. 8, 2010) (internal quotation marks omitted)). While the Sixth Circuit has not

12

articulated specific factors itself, the court has noted a "sensibl[e] fear that incentive awards may lead named plaintiffs to expect a bounty for bringing suit or to compromise the interest of the class for personal gain." Shane Group, Inc. v. Blue Cross Blue Shield of Michigan, 825 F.3d 299, 311 (6th Cir. 2016) (quoting Hadix v. Johnson, 322 F.3d 895, 897 (6th Cir. 2003)). District courts in this circuit have thus looked to several factors when determining whether to approve service incentive awards, including:

> (1) the action taken by the Class Representatives to protect the interests of the Class Members and others and whether these actions resulted in a substantial benefit to Class Members; (2) whether the Class Representatives assumed substantial direct and indirect financial risk; and (3) the amount of time and effort spent by the Class Representatives in pursuing the litigation.

Ware, 2020 WL 2441415, at *17 (quoting Ross, 2016 WL 7320890, at *5).

Here, Plaintiff Amanda Nelson undertook the initial action to file the collective action against Defendants under the FLSA. Moreover, it appears that the opt-in Plaintiffs will receive largely what they claim to be owed in back pay and liquidated damages, a substantial benefit. Plaintiffs' Counsel also clarified the level of involvement Nelson had here. Nelson assisted Plaintiffs' Counsel in "gathering relevant facts and instructing counsel on Defendants' unorthodox pay practices, reviewing the complaint, and regularly and routinely interacting with Counsel on behalf of herself and the collective." (ECF No. 50 at PageID 197.) While Plaintiffs' Counsel took this case on a contingency basis, which reduced Nelson's financial exposure to a potential negative verdict, the Court finds that the other two factors here weigh in favor of approving the service award.

### 2. Attorney's Fees

The Settlement awards Plaintiffs' Counsel a total payment of $22,160.02 in attorney's fees. "An award of attorney fees to a prevailing plaintiff under § 16(b) of the FLSA is mandatory but the amount of the award is within the discretion of the judge." Fegley v. Higgins, 19 F.3d 1126, 1134 (6th Cir. 1994) (citation omitted). A reviewing court must assess plaintiffs' attorney's fees, "even when the fee is negotiated as part of a settlement rather than judicially determined." Thompson v. United Stone, LLC, No. 1:14-CV-224, 2015 WL 867988, at *2 (E.D. Tenn. Mar. 2, 2015) (quoting Lliguichuzhca v. Cinema 60, LLC, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013)). Six factors govern the reasonableness of class action fees:

> (1) the value of the benefit rendered to the plaintiff class . . . ; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

Bowling v. Pfizer, Inc., 102 F.3d 777, 780 (6th Cir. 1996) (citation omitted). The reviewing court should not place significant weight on the balance between the amount of attorney's fees in relation to that recovered by plaintiffs as significant fees may be justified even if plaintiffs only recover a nominal amount. Fegley, 19 F.3d at 1135; see also, Thompson, 2015 WL 867988, at *2 ("the possibility of attorney's fees that eclipses any overtime pay award should add to the incentive for an employer to make a quick and just resolution of even the most minor overtime claims").

Here, the Court finds the attorney's fees awarded in the Settlement reasonable under the Bowling factors. Each of the following factors weigh in favor of a finding of reasonableness: (1) as described, the benefit to Plaintiffs is substantial as the class is recovering their full claimed damages amount plus one-half of their claimed liquidated damages; (2) Plaintiffs' Counsel's

14

hourly rate of $365.00 per hour and $225.00 per hour for his associate constitute reasonable hourly rates; (3) Plaintiffs' Counsel took this case on a contingency basis, representing significant risk of nonpayment; (4) society has a significant stake in rewarding attorneys who assist in enforcing the FLSA's employment regulations, see Does 1-2, 925 F.3d at 899; (5) as mentioned, this suit constitutes a complex piece of litigation, involving multiple Defendants and over a dozen members of the collective action; and (6) both sides were represented by professional counsel and Plaintiffs' Counsel is experienced in litigating single-plaintiff and collective action labor lawsuits.

The Court also notes that the attorney's fees awarded in the Settlement ($22,160.02) constitute a nearly fifty-percent reduction in Plaintiffs' Counsel's lodestar calculations. (See ECF No. 50-1 at PageID 202.) While the overall fees are large when compared with the amount awarded to Plaintiff and the Collective Members, this factor does not have significant weight given the low amount of overtime pay due individually to Plaintiff and each Member and the significant hours Plaintiffs' Counsel expended pursuing this case. Therefore, the Court finds the amount of attorney's fees awarded in the Settlement reasonable.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Parties' Joint Motion for Settlement.

**IT IS SO ORDERED,** this 25th day of August, 2022.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
UNITED STATES DISTRICT JUDGE
